

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAY 04 2009

Stephan Harris, Clerk
Cheyenne

Paul J. Hickey (#5-1431)
Roger C. Fransen (#5-2147)
Hickey & Evans, LLP
1800 Carey Avenue, Suite 700
P.O. Box 467
Cheyenne, WY 82003
Tel. (307) 634-1525
Fax (307) 638-7335

Beth S. Ginsberg (*Pro Hac Admission* Pending)
Jason T. Morgan (*Pro Hac Admission* Pending)
STOEL RIVES, LLP
600 University Street, Suite 3600
Seattle, WA 98101
Tel.: (206) 624-0900
Fax: (206) 386-7500

ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

WYOMING STATE SNOWMOBILE
ASSOCIATION and the WASHINGTON
STATE SNOWMOBILE ASSOCIATION,

Plaintiffs,

v.

U.S. FISH AND WILDLIFE SERVICE
AND KENNETH SALAZAR,
SECRETARY OF THE INTERIOR

Defendants.

Civil No. *09-CU-95-13*

COMPLAINT

Page 1 - COMPLAINT

## PRELIMINARY STATEMENT

1. The Wyoming and Washington State Snowmobile Associations (collectively "WSSA") hereby challenge the United States Fish and Wildlife Service's ("FWS" or "Service") decision to designate critical habitat for the Canada Lynx under the Endangered Species Act ("ESA") as violative of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 *et seq.* Under ESA section 4(a)(3)(A), FWS set aside 39,000 square miles of land in the states of Wyoming, Washington and four other states -- an area roughly the size of the state of Indiana-- as "essential" to the conservation of the lynx. This is the largest designation of critical habitat FWS has ever made for any terrestrial species. 74 Fed. Reg. 8618, codified at 50 C.F.R. § 17.95. Among the millions of acres impacted by this decision, the designation includes Wyoming's Continental Divide Snowmobile Trail system, consistently rated as one of the best trail networks nationwide and one of the most popular snowmobile destinations in the country.

2. Despite the unprecedented scale of this action and the Service's acknowledgment that it will likely require changes to recreational, timber, and wildfire management, while impacting transportation and development projects -- and despite receiving numerous comments detailing the myriad ways in which the designation will: (a) significantly restrict and therefore adversely impact recreational and associated aesthetic interests; (b) and diminish forest health and ecology, while increasing susceptibility to devastating wildfires -- the Service issued a *pro forma* Finding of No Significant Impact ("FONSI"), and decided not to issue a thorough Environmental Impact Statement ("EIS") as required by NEPA.

3.     The FONSI failed to provide any explanation -- let alone a reasoned explanation - for its determination that no significant effects on the quality of the human environment flow from the critical habitat designation. In issuing the FONSI, the FWS relied on an inadequate environmental assessment ("EA") that failed to consider a reasonable range of alternatives, and failed to analyze reasonably foreseeable significant adverse effects of the rule, including cumulative effects of the designation.

4.     Plaintiffs are non-profit snowmobile organizations with members in Wyoming and Washington. Plaintiffs' members use and enjoy the lands designated as critical habitat for recreation, wildlife viewing, camping, fishing, and aesthetic enjoyment. Plaintiffs' members also have an economic interest in these lands as some of its members are businesses that provide access to winter recreational activities and depend on snowmobile recreation for their livelihood.

5.     The designation will restrict WSSA's access to and use of federal forests in Wyoming and Washington by making it more difficult and in some cases impossible to obtain federal approvals to maintain and improve existing snowmobile trails and facilities on affected lands. It will also limit WSSA's ability to create new trails, which will both: (a) reduce or restrict snowmobiling opportunities; (b) create snowmobiling and related safety hazards, while (c) diminishing the aesthetic or recreational enjoyment of Plaintiffs' members. Plaintiffs devote significant resources towards maintenance, and expansion of existing snowmobile trails and more generally, the stewardship of the surrounding national forest lands on which they recreate.

6.     The designation will also restrict or in some cases prohibit implementation of forest management and forest ecology practices necessary to prevent catastrophic forest fires,

Page 3   -   COMPLAINT

disease, and insect infestation. Because Plaintiffs' members have a keen interest in continued

use of federal forest lands for wildlife viewing, back-country recreating, and for general

recreational and aesthetic purposes, the designation itself, and the FWS' failure to adequately

assess the nature and extent of the designation's adverse environmental impacts, adversely

affects WSSA.

7.     Plaintiffs request that the Court declare the rule unlawful, enjoin its

implementation, and remand the rule to the FWS for further consideration in compliance with

NEPA, its implementing regulations, and the APA.[1]

## PARTIES

8.     The Plaintiffs in this action are:

A)     The Wyoming State Snowmobile Association, a non-profit organization devoted

to the advancement of the general welfare and safety of snowmobiling, and to promoting the

overall interests of snowmobile owners and snowmobile related businesses in the State of

Wyoming.

B)     The Washington State Snowmobile Association, a non-profit organization

founded in 1972 representing approximately 35,000 registered snowmobile owners and 100

snowmobile-related businesses throughout Washington State, similarly devoted to the welfare

and safety and overall recreational and economic interests of its membership.

---

[1] On April 1, 2009, Plaintiffs sent Secretary Salazar a 60-day notice of intent to sue the FWS for additional violations of the ESA arising out of defendants' issuance of the Canada lynx critical habitat designation. As soon as the 60- day period expires, Plaintiffs intend to amend this complaint to add ESA claims as permitted by 16 U.S.C. § 1540(g)(1)(C).

Page 4   -   COMPLAINT

9.      In addition to promoting safe snowmobiling, WSSA is devoted to maintaining the quality of public trail systems, to ensuring continued access to public lands -- which include trails, shelters, and related recreational improvements -- and to ensuring healthy forests within which to recreate. To protect these interests, WSSA is actively involved in shaping an assortment of land use, economic and regulatory issues impacting snowmobiling -- both in their respective states and nationally -- by participating in administrative rulemaking, in the legislative process, and when necessary, in litigation.

10.     Defendant FWS is an agency of the United States Interior Department responsible both for administering the provisions of the ESA with regard to threatened and endangered wildlife, including, but not limited to the Canada Lynx critical habitat designation, and for complying with NEPA.

11.     Defendant Salazar is the Secretary of the Interior and in that capacity is responsible for the Canada Lynx critical habitat designation and the FWS's failure to comply with fundamental NEPA requirements.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action under 5 U.S.C. § 706 (Administrative Procedure Act), 28 U.S.C. § 1331 (federal question), § 2201 (declaratory judgment) and § 2202 (injunctive relief).

13.     Venue is properly vested in this court under 28 U.S.C. § 1391(e) first because members of the WSSA's members reside in this district and these members snowmobile and do business here. Second, a substantial part of the lands and species affected by the critical habitat

Page 5   -   COMPLAINT

designation are located in this district. Third, venue is properly vested here because defendant

FWS maintains an office in this district.

## STATUTORY FRAMEWORK

A.     The Administrative Procedure Act

14.    The Administrative Procedure Act ("APA") authorizes courts reviewing agency

action to hold unlawful and set aside final agency action, findings, and conclusions that are

arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. 5

U.S.C. § 702(2)(A). EAs and FONSIs issued pursuant to NEPA are reviewed under this

provision of the APA. Agency decisions not to issue an EIS are similarly reviewed under the

APA.

B.     The National Environmental Policy Act ("NEPA")

15.    Under NEPA, agencies are required to prepare an EIS for any major federal action

significantly affecting the human environment. 42 U.S.C. § 4332(C). This requirement ensures

that NEPA's environmental protection policies are integrated into all environmental

decisionmaking. 40 C.F.R. §1501.1(a). It enables decisionmakers and the general public the

ability to evaluate the environmental impacts of governmental proposals. 40 C.F.R. § 1502.1.

Partial fulfillment of NEPA's requirements is not enough. In enacting NEPA, Congress required

federal agencies to comply with the Act "to the fullest extent possible." 42 U.S.C. §  4332(C);

Catron County Board of Commissioners, v. U.S. F.W.S., 75 F.3d 1429, 1437 (10th Cir. 1996).

Compliance with NEPA furthers the goals of the ESA in cases like this one where critical habitat

designations have immediate and potentially significant adverse effects. Id., 75 F.3d at 1436.

Page 6  -   COMPLAINT

16.    To determine whether an action significantly affects the human environment and thus requires development of an EIS, agencies may first conduct an EA which can take the form of a more truncated or streamlined analysis. 40 C.F.R. §§ 1501.4(c); 1508.9. However, only if an agency concludes that the proposed action will have no significant effects on the human environment may the agency issue a FONSI in lieu of an EIS.

17.    An EA is sufficient in only those obvious circumstances where an agency has taken a "hard look" at the potential consequences of its decision and concluded that no effect on the environment is possible. Committee to Preserve Boomer Lake v. Dept. of Transportation, 4 F.3d 1543, 1554 (10th Cir. 1993). For those circumstances to exist, the conclusions reached must be close to self-evident, not require extended documentation, and be adequately and rationally explained in the corresponding FONSI. See, e.g., Sierra Club v. Bosworth, 352 F. Supp.2d 909 (D. Minn. 2005). When the question of whether a proposed action will result in significant impacts is a close call or cannot be conclusively resolved in the negative, an EIS must be prepared. Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir. 2002); 40 C.F.R. § 1501.4(a).

18.    An EIS, in contrast, is intended to be a more thorough and in-depth environmental analysis of a proposed action. 40 C.F.R. § 1508.13.

19.    Whether a project "significantly" affects the human environment, triggering NEPA's more in-depth EIS requirement, depends on the project's "context" - the scope of the action - and its "intensity." 40 C.F.R. § 1508.27. Factors determining the intensity of a project include both beneficial and adverse effects, the degree to which the project's effects are likely to

Page 7   -   COMPLAINT

be highly controversial or uncertain, and the extent to which the action may impact endangered or threatened species or their critical habitat.  Id.

20.     By definition, the designation of critical habitat is "significant" because designations necessarily impact listed species and their habitat.  40 C.F.R. § 1508.27.  Because "Secretarial action under the ESA is not inevitably beneficial or immune to improvement by compliance with NEPA, the implementing regulations require an EIS even where impacts are, on balance, beneficial."  See, e.g., Catron County 75 F.3d at 1436.

21.     Thus, critical habitat designations are presumed to be major federal actions that have significant effects on the human environment.  See Middle Rio Grande Conservancy District v. Babbitt, 206 F. Supp. 2d 1156, 1192-93 (D. N.M 2000) ("circumstances. . . which would relieve the Secretary of the Interior from the duty to prepare an EIS when designating critical habitat will be unquestionably rare"), aff'd., 294 F. 3d 1220 (10th Cir. 2002).

22.     Absent compelling reasons to the contrary, an EIS is required for critical habitat designations because significant impacts - both beneficial and negative -- flow directly from their issuance.  Catron County, 75 F.3d at 1436 (critical habitat designation can have immediate and significant effects); 40 C.F.R. § 1508.27(b)(1)("significance may exist where effect will be, on balance, beneficial").

23.     All NEPA reviews -- whether in the form of an EA or an EIS -- must evaluate a reasonable range of alternatives and their corresponding environmental effects.  42 U.S.C. § 4331(2)(E).  The purpose of the alternatives requirement is to ensure that the agency gathered information sufficient to permit a reasoned choice of alternatives as far as environmental impacts

Page 8   -   COMPLAINT

are concerned. Greater Yellowstone Coalition v. Flowers, 359 F.3d 1257, 1277 (10th Cir. 2004). The discussion of alternatives is "the heart" of the NEPA process, and is intended to provide a "clear basis for choice among options by the decisionmaker and the public." 40 C.F.R. § 1502.14(a)( agency must "[r]igorously explore and objectively evaluate all reasonable alternatives.").

24.    An agency's failure to consider a reasonable alternative is fatal to an agency's NEPA analysis. While NEPA does not require consideration of every conceivable alternative, it does, nonetheless, require a thorough discussion of those alternatives the agency actually considered during its decision making process. 40 C.F.R. §§ 1502.2 (e); 1505.1(e).

25.    In conducting NEPA reviews, Federal agencies must analyze both the direct effects which are caused by the action and occur at the same time and place, as well as the indirect effects, which are caused by the action and are later in time or farther removed in distance. 40 C.F.R. § 1508.8(a), (b).

26.    Federal agencies must also consider the cumulative environmental impacts of their actions. 40 C.F.R. § 1508.25(c). Cumulative impacts result from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time. 40 C.F.R. § 1508.7.

27.    NEPA's requirements are not only designed to inform the decisionmaker of the environmental consequences of and the potential alternatives to a proposed action, but are also designed to notify the public of the action and its likely environmental effects, and to solicit the

Page 9   -   COMPLAINT

public's views to "help public officials make decisions that are based on an understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." 40 C.F.R. § 1500.1(c); Catron County, 75 F.3d at 1437.

28. Accordingly, agencies must make reasoned responses to comments received on draft environmental analyses and must provide a meaningful reference to opposing viewpoints concerning the agency's proposed decision. An agency's failure to respond to comments renders a NEPA analysis invalid. Davis, 302 F.3d 1104.

## THE FWS'S CANADA LYNX CRITICAL HABITAT NEPA PROCESS

A. The history of the lynx critical habitat designation

29. This is not the first time the FWS designated lynx critical habitat. The Service originally designated lynx critical habitat on November 9, 2006, but only after being forced to do so by the District of Columbia District Court as a result of litigation brought by environmental groups to force the agency to comply with its statutory directives. 71 Fed. Reg. 66008; 70 Fed Reg. 68296 (November 9, 2005)(complaining that Service has been "inundated with lawsuits for our failure to designate critical habitat"); *Environmental Assessment, Designation of Critical Habitat for the Contiguous United States Distinct Population Segment of the Canada Lynx* (U.S FWS, Feb. 2009) at 2-3,6 (hereafter "EA") at 6.

30. In addition to a series of deadline lawsuits, the FWS also faced Congressional scrutiny of a series of agency decisions made by senior political officials. After a Congressional Hearing was convened to investigate the manner and degree to which FWS decisions were improperly politically influenced by Julie MacDonald, a former Department of Interior Assistant

Secretary for Fish, Wildlife and Parks, the FWS convened an internal review of ESA decisions. As a result of that internal review, the FWS decided to voluntarily retract the original lynx critical habitat designation after determining that the designation was improperly politically influenced, was not based on the best available science, and was founded on incorrect interpretations of law. Id.

31.    The Service's reluctance to comply with the law stemmed from its long - held belief that the designation of critical habitat is, in most circumstances, a resource intensive effort that provides little additional value for listed species. 70 Fed. Reg 68925-26. According to the Service, the ESA protects species with and without critical habitat designations, which makes critical habitat designations redundant to the general conservation effort. Id. In the Federal Register notice accompanying the original lynx critical habitat designation retracted by the Service, FWS explained that "[i]n 30 years of implementing the Act, the Service has found that the designation of statutory critical habitat provides little additional protection to most listed species, while consuming significant amounts of conservation resources." Id. Designations, in fact, "provide[] little real conservation benefit, [are] driven by litigation and the courts rather than biology, limit[] our ability to fully evaluate the science involved, consume[] enormous agency resources, and impose[] huge social and economic costs." Id. at 68296.

B.    The Service's failure to comply with NEPA

32.    Stemming from its views on the utility of the designations, the Service not surprisingly views its corollary NEPA mandate as an unnecessary statutory burden that provides little additional environmental benefit. 73 Fed Reg. 10881. In fact, the Service believes that it

Page 11 -    COMPLAINT

may simply ignore NEPA obligations when designating critical habitat outside of the Tenth Circuit. Id; 48 Fed Reg. 49244. Recognizing, however, that the range of lands designated in this rule encompasses lands within Wyoming -- which are subject to the judicial rulings of the Tenth Circuit Court of Appeals - the Service begrudgingly issued a cursory and incomplete NEPA analysis that gives short shrift to NEPA's underlying goals.

C.    The designation required an EIS

33.    Instead of preparing an EIS as was required by law, the FWS issued a truncated EA together with a FONSI for the critical habitat designation. See generally, EA.

34.    The FONSI did not articulate any explanation -- let alone a reasoned explanation - for the Service's perfunctory conclusion that the effects of the designation would not be significant. Failure to provide a reasoned explanation for that conclusion reached renders the FONSI arbitrary on its face.

35.    By definition, the Service should have prepared an EIS due to the massive size of the critical habitat designation alone. The designation, in fact, encompasses lands greater in size than the state of Indiana. Setting aside tens of thousands of square miles of lands in the states of Maine, Minnesota, Montana, Wyoming, Idaho and Washington for the conservation of lynx, the designation represents a twenty-fold increase in geographical scope when compared to the scope of the originally promulgated (and subsequently retracted designation) which encompassed only 1,841 square miles nationwide.

Page 12 -    COMPLAINT

36.     Because the proposed designation will impact activities and uses on huge areas within national forests and parks and state and private lands, the final designation constitutes a major federal action significantly impacting the human environment, triggering an EIS.

37.     Effects of an action may be both beneficial and adverse. NEPA implementing regulations recognize that a significant adverse effect may exist even if the agency believes the action is, on balance, beneficial to the environment. 40 C.F.R. § 1508.27(b)(1). Although the FWS considers the designation of critical habitat to be marginally beneficial, the unmitigated adverse effects and significance of the designation requires preparation of an EIS.

38.     In addition to its massive size, issuance of the critical habitat designation warranted an EIS in this case because the actual effects of the critical habitat designation have proven to be highly controversial. 40 C.F.R. § 1508.27 (b)(4). Indeed, a considerable legal and factual dispute exists as to whether the significant impacts identified -- ranging from impacts to forest management/ecology practices, to impacts to recreational interests and local communities - are properly attributable to the critical habitat designation, or to the initial ESA listing decision.

39.     This is the sort of public controversy -- reflected in the agency's conflicting approaches to this issue -- that compels issuance of an EIS. 40 C.F.R. § 1508.27(b)(4). See Catron, 75 F.3d at 1436 (merely because FWS says no impacts flow from designation "does not make it so"). See also Oregon Natural Resources Council v. Forsgren, 252 F. Supp.2d 1088 (D. Or. 2003)(Service's revisions to lynx mapping direction was "significant" and thus required Supplemental EIS because it actually reduced the amount of critical habitat by thousands of acres without analyzing the clearly significant environmental consequences).

Page 13 -   COMPLAINT

40.     This controversy is magnified by the Service's acknowledgement that the

designation may impact fire ecology of federal lands by altering forest management practices.

The Service admits that the critical habitat designation will restrict and/or prohibit fuel reduction

projects and pre-commercial thinning -- both of which are considered to be essential practices for

ensuring forest health, forest fire resiliency, and for preventing insect infestation. On this basis,

the designation is likely to significantly increase the risk of forest fires, warranting further study

in an EIS.

D.      The Service's pro-forma EA fails to satisfy NEPA's "hard look" mandate

41.     The EA is legally inadequate because it does not analyze a sufficient number of

alternatives. Rather than analyzing the effects of the alternatives that the FWS actually

considered in the ESA designation process, the EA took an "all or nothing approach" and only

nominally compared the effects of the proposed designation against the effects of the "no action"

alternative -- *i.e.*, the alternative of not designating any amount of critical habitat. See Davis,

302 F.3d at 1123 (10th Cir. 2002) (invalidating alternatives analysis that only considered

proposed action and no action).

42.     The EA failed to analyze the effects of all options that were considered by the

Service, including: the inclusion of Kettle Range lands; and the exclusion of: (a) areas within the

wildlands urban interface; (b) certain tribal and private lands; (c) the Greater Yellowstone Area;

and (d) any or all federal lands under ESA section 4(b)(2) including forest lands in Washington

State. Each one of those alternatives presents differing environmental and economic

consequences.

Page 14 - COMPLAINT

43.     In fact, the Service provided no justification for its failure to consider any designation less than the full 42,000 square miles originally contemplated in the proposed rule. Because the final rule excluded approximately 1,725 square miles of land originally proposed for inclusion, the Service's failure to evaluate the effects of excluding those lands renders the EA invalid as a matter of law. Middle Rio Grande, 206 F. Supp. 2d at 1178; Oregon Natural Resources Council, 252 F. Supp. 2d at 1103-1107.

44.     In addition to failing to consider a reasonable range of alternatives, including alternatives proposed by WSSA for the exclusion of federal lands covered by existing lynx management plans, the EA failed to adequately analyze the alternatives it did identify. Instead of conducting the requisite analysis, the Service simply catalogued or listed potential effects, without actually analyzing the nature or extent of that impact.

45.     In particular, the Service failed to analyze the environmental effects resulting from the inability to employ critical forest management and fire ecology practices, including pre-commercial thinning and fuel reduction projects. While the Service acknowledged some impact resulting from the curtailment of these essential forest management practices, it failed to address the extent of that impact to enable it to make a reasoned and informed decision.

46.     More to the point, the Service entirely failed to address the environmental impact of the designation on fire ecology in Washington State even after receiving extensive comments from WSSA on this issue. Davis, 302 F.3d at 1118 (invalidating EA and FONSI because the EA failed to consider a reasonable range of alternatives, contained inadequate discussion of project impacts, and discussed issues in a manner that was "too vague, incomplete and inadequate to

Page 15 - COMPLAINT

allow the decision-maker to decide if an EIS is required."). The Service similarly failed to

discuss the impact of the designation on fire ecology in Wyoming despite comments requesting

additional NEPA analysis and explaining that critical habitat designation will further impair the

ability of the Forest Service to properly manage forests, reduce fire hazards, and control pine

beetle infestation.

47.     The Service also failed to address potential impacts on WSSA's recreational

interests. The designation will impair the ability of WSSA to maintain existing snowmobile

trails and will make creation of new trails largely impossible. Trail maintenance often entails

removal of large downed trees which impede trail access and create significant safety concerns.

To the extent these fallen trees qualify as a primary constituent element of lynx critical habitat,

they would be prohibited from being removed on designated lands. If WSSA is unable to

remove these downed trees and to sufficiently maintain these trails, its ability to use existing

trails and to more generally recreate on these designated lands, will be significantly restricted.

48.     While the EA described the nature of recreation in other affected areas of the

designation, it neglected to describe -- let alone evaluate -- the nature and extent of impacts to

snowmobiling in Washington State with the limited exception of the Loomis State Forest which

was ultimately excluded from the final designation. EA at 31. FWS's failure to take a hard look

at these effects was inexcusable in light of the economic study commissioned by WSSA and

WSSA's various comment submissions demonstrating the severity of these recreational impacts.

49.     The EA also failed to address anticipated impacts on grazing activities. Many

snowmobile trails are maintained by WSSA in cooperation with ranchers and in conjunction with

Page 16 -   COMPLAINT

ranching and grazing activities. Because impacts on grazing allotments and snowmobile trail

maintenance are necessarily linked, the EA's failure to address grazing impacts exacerbates its

failure to properly analyze impacts to snowmobiling and related recreational interests.

50.     Under the Multiple Use Sustained Yield Act, 16 U.S.C. §§ 528-531, national

forests must be managed for multiple uses, including recreation, livestock grazing, timber

harvesting, watershed protection and wildlife protection. The designation of critical habitat will

alter the balancing that foresters engage in when devising forest management plans in

satisfaction of the multiple use mandate. The failure of the EA to evaluate the environmental

effects that result from that re-balancing also renders the NEPA analysis deficient.

51.     In addition to failing to adequately analyze the effects of the alternatives it did

consider, the Service failed to comprehensively evaluate the range of potential effects, including

the cumulative effects (i.e., other past, present, and reasonably foreseeable future actions)

resulting from the designation, as required by 40 C.F.R. § 1508.7. Although it lists several

anticipated cumulative impacts, the EA fails to actually evaluate those impacts as required by

NEPA.

52.     More specifically, the EA devotes less than a full paragraph to the discussion of

cumulative effects. See EA at 46. The EA states that actions "that could have cumulative

impacts would include: (a) the section 7 consultation outcomes and subsequent effects on other

species; (b) the effects of designated critical habitat for other species; and (c) the effects of land

management plans. Id. The EA then summarily and with no explanation states that "the Service

expects the impacts to be relatively minimal" and ends with an incomplete sentence

Page 17 -    COMPLAINT

demonstrating the lack of attention given to cumulative impacts, the EA, and its NEPA obligations more generally. Id.

53.     Not only does the EA fail to specify what types of effects might result from the re-initiated or new consultations, it fails to take the extra step required by NEPA to analyze whether the cumulative effects, when added to the other identified direct, and indirect effects, are significant. Id. This defect by itself, mandates reversal. Davis, 302 F.3d at 1125-26.

54.     Indeed, individually minor effects may become collectively significant when properly analyzed under the cumulative effects mandate. 40 C.F.R. § 1508.7. The sorts of general, perfunctory statements about "possible effects" set forth in the EA's *pro-forma* cumulative effects section does not constitute the hard look required by NEPA. Wyoming v. U.S. Dept of Agriculture, 570 F. Supp. 2d 1309, 1333 (D. Wyo. 2008)(eschewing and invalidating mere "*pro-forma* compliance with NEPA").

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### THE FWS'S VIOLATION OF NEPA AND THE APA
### FAILURE TO PREPARE AN EIS

55.     Plaintiffs incorporate by reference all preceding paragraphs.

56.     NEPA required the Service to prepare an EIS in connection with the Canada Lynx critical habitat designation because the designation is a major federal action resulting in significant effects to the human environment. 42 U.S.C.§ 4332(C).

57.     The FWS's refusal to prepare an EIS in connection with the critical habitat designation renders the designation invalid under NEPA.

Page 18 -   COMPLAINT

58.     The APA authorizes reviewing courts to set aside federal agency action that is

arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706

(a)(2).

59.     By issuing the critical habitat designation in the absence of an EIS, the FWS has

acted in a manner that is arbitrary, capricious, an abuse of discretion, and not in accordance with

law, in violation of NEPA and the APA. 5 U.S.C. § 706.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF NEPA AND THE APA
### FAILURE TO PROVIDE A REASONED EXPLANATION FOR THE FONSI

60.     Plaintiffs incorporate by reference all preceding paragraphs.

61.     The Service was required to provide a reasoned justification for the conclusions

reached in the FONSI.

62.     The FONSI failed to provide any explanation -- let alone a reasoned explanation--

for the perfunctory finding that no significant effects will result from the designation.

63.     Failure to provide a reasoned explanation for the conclusions reached in the

FONSI renders it invalid under NEPA. The APA authorizes reviewing courts to set aside federal

agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

5 U.S.C. § 706 (a)(2).

64.     By issuing the FONSI in the absence of a reasoned explanation for the

conclusions reached therein, the Service acted in a manner that is arbitrary, capricious, an abuse

of discretion, and contrary to law, in violation of NEPA and the APA. 5 U.S.C. § 706.

Page 19  -   COMPLAINT

### THIRD CLAIM FOR RELIEF
### VIOLATION OF NEPA AND THE APA
### THE EA'S FAILURE TO ADEQUATELY ANALYZE A
### REASONABLE RANGE OF ALTERNATIVES

65.     Plaintiffs incorporate by reference all preceding paragraphs.

66.     In issuing the EA, the FWS considered only the no action and the proposed action alternatives.

67.     NEPA requires agencies to consider a reasonable range of alternatives and to rigorously explore and objectively evaluate the effects of those alternatives in the decisionmaking process. The alternatives analysis is the heart of the NEPA process and is intended to provide a "clear basis for choice among options by the decisionmaker and the public." 40 C.F.R. § 1502.14.

68.     By refusing to conduct a NEPA analysis of all alternatives actually considered for the critical habitat designation, the FWS failed to evaluate a reasonable range of alternatives as required by NEPA and its implementing regulations. 42 U.S.C. § 4331(2)(E); 40 C.F.R. §§ 1502.2(e); 1505.1(e).

69.     The APA authorizes reviewing courts to set aside federal agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706 (a)(2).

70.     By issuing an EA that fails to analyze a reasonable range of alternatives, the FWS has acted in a manner that is arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of NEPA and the APA. 5 U.S.C. § 706.

Page 20  -   COMPLAINT

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF NEPA AND THE APA
### FAILURE TO TAKE A HARD LOOK AT THE EFFECTS OF THE DESIGNATION

71.     Plaintiffs incorporate by reference all preceding paragraphs.

72.     The EA failed to take a "hard look" at the effects of the designation and instead issued a *pro-forma* FONSI concluding that no significant effect would result from the designation. The EA failed to address -- let alone adequately evaluate -- the impacts of the designation on the recreational and aesthetic interests of WSSA, and failed to address and evaluate the designation's impact on forest management and ecology practices in the states of Washington and Wyoming.

73.     In so doing, the EA failed to evaluate the extent to which the designation may exacerbate risks of devastating forest fires, insect infestation, and disease. It also failed to adequately assess the extent of the designation's impact on snowmobiling and the quality of the snowmobiling experience in Washington and Wyoming.

74.     The EA's failure to take a "hard look" at the significant effects of the designation renders it invalid under NEPA.

75.     The APA authorizes reviewing courts to set aside federal agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law.  5 U.S.C. § 706 (a)(2).

76.     By issuing an EA that fails to take a hard look at the effects of the designation, the FWS has acted in a manner that is arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of NEPA and the APA.  5 U.S.C. § 706.

Page 21 - COMPLAINT

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF NEPA AND THE APA
## FAILURE TO TAKE A HARD LOOK AT THE CUMULATIVE
## EFFECTS OF THE DESIGNATION

77.     Plaintiffs incorporate by reference all preceding paragraphs.

78.     In addition to the direct and indirect effects, an EA must adequately analyze the cumulative effects of a proposed action. 40 C.F.R. § 1508.25(c).

79.     The EA fails to identify -- let alone evaluate -- the cumulative effects of the critical habitat designation.

80.     The APA authorizes reviewing courts to set aside federal agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706 (a)(2).

81.     By failing to adequately evaluate the cumulative effects of the critical habitat designation, the EA violates NEPA and the APA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.     Adjudge and declare that the FWS violated NEPA and the APA by failing to issue an EIS for the Canada Lynx critical habitat designation;

2.     Adjudge and declare that the FWS violated NEPA and the APA by issuing an FONSI that failed to provide any explanation, let alone a reasoned explanation, for its conclusion that the designation results in no significant impacts on the quality of the human environment;

Page 22 -   COMPLAINT

3.      Adjudge and declare that the FWS violated NEPA and the APA by issuing an EA

that failed to: (a) evaluate a reasonable range of alternatives; (b) adequately analyze the

alternatives that it did analyze; and (c) take a hard look at the environmental effects, including

the cumulative effects, of the critical habitat designation;

4.      Enjoin the FWS to withdraw the EA and FONSI for the Canada Lynx critical

habitat designation;

5.      Enjoin the FWS to prepare an EIS that resolves the violations of law complained

of herein;

6.      Enjoin the FWS to withdraw the critical habitat designation pending completion

of a valid EIS.

7.      Award Plaintiffs their reasonable fees, costs, expenses and disbursements,

including attorneys' fees associated with this litigation, and;

8.      Grant Plaintiffs such further and additional relief as the Court may deem just and

proper.

Respectfully submitted this ___ day of May, 2009.

Paul J. Hickey (#5-1431)
Roger C. Fransen (#5-2147)
HICKEY& EVANS, LLP
1800 Carey Avenue, Suite 700
P.O. Box 467
Cheyenne, Wyoming 82003-0467
Telephone: (307) 634-1525
Facsimile: (307) 638-7335
phickey@hickeyevans.com
rfransen@hickeyevans.com

Page 23 -   COMPLAINT

Beth S. Ginsberg (*Pro Hac Admission* Pending)
Jason T. Morgan (*Pro Hac Admission* Pending)
STOEL RIVES, LLP
600 University Street, Suite 3600
Seattle, WA 98101
Tel.: (206) 624-0900
Fax: (206) 386-7500

Attorneys for Plaintiffs,
Wyoming State Snowmobile Association and
Washington State Snowmobile Association

Page 24 - COMPLAINT

Seattle-3519574.2 0040924-00007